**IN THE COURT OF APPEALS OF IOWA**

No. 17-0922
Filed August 2, 2017

**IN THE INTEREST OF L.C.,**
**Minor Child,**

**K.L., Mother,**
    Appellant.

_____

        Appeal from the Iowa District Court for Dubuque County, Thomas J.

Straka, Associate Juvenile Judge.


        A mother appeals the termination of her parental rights to her one-year-old

son. **AFFIRMED.**


        Taryn R. Purcell of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P.,

Dubuque, for appellant mother.

        Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney

General, for appellee State.

        Patricia M. Reisen-Ottavi of Ottavi Law Firm, Dubuque, guardian ad litem

for minor child.


        Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

A mother, Kara, is again before our court challenging the termination of her parental rights. At issue today is one-year-old L.C. Two months ago, we affirmed the juvenile court's termination of Kara's parental relationship with three older children based on her continuing struggle with addiction. *See In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017) (opining "[m]ethamphetamine is a scourge"). After independently reviewing this record,[1] we conclude Kara's bid for reunification with L.C. also must fail.

In this appeal, Kara poses four questions: (I) did the State prove a statutory ground for termination under Iowa Code section 232.116(1) (2017) by clear and convincing evidence? (II) did the juvenile court err in denying her request for a six-month extension? (III) was termination in L.C.'s best interests? and (IV) did the court err in denying her reasonable-efforts motion? We answer them respectively: yes, no, yes, no. Accordingly, we affirm the juvenile court's termination order.[2]

Parents Kara and Douglas share a "chaotic and unstable history," according to a case manager for the Iowa Department of Human Services (DHS). Kara has been the victim of domestic violence perpetrated by Douglas. In addition, Kara has been abusing methamphetamine for more than ten years.

---

[1] We review termination-of-parental-rights proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App.1995). We are not bound by the factual findings of the juvenile court, but we give them weight, especially when witness credibility is being measured. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Proof must be clear and convincing, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

[2] The juvenile court also terminated the parental rights of L.C.'s father, Douglas. He does not appeal.

These issues led to the removal of her three older children. The DHS case plan for Kara did not allow Douglas to be at her residence if the children were present.

L.C. was born in May 2016. At that time, Kara was living at the Maria House, a transitional housing initiative, and was participating in outpatient substance-abuse treatment. She also began a trial home placement with the three older children. In August she moved to her own apartment in Dyersville with the four children. She successfully discharged from substance-abuse treatment in September 2016.

Then in October, everything fell apart. Douglas moved into the apartment in violation of the DHS safety plan. The neighbors heard screaming and fighting. Kara and others repeatedly called the police to report domestic violence. Douglas and Kara used methamphetamine together. Kara and L.C., then five months old, both tested positive for the drug. All four children were removed from Kara's care. Douglas was incarcerated on November 1, 2016.

In the following months, Kara had supervised visitation with the children. During a visitation in December 2016, the social worker asked to do a walk-through in Kara's home. Kara then disclosed she had been out drinking with a man the night before, he stayed overnight in her bedroom, and he had not left before the scheduled 11:00 a.m. visitation. Kara was not truthful with the DHS about the man's identity. An even more alarming incident occurred at Kara's home in January 2016. Kara reported another man "allegedly overdosed at her apartment." These incidents led the DHS case worker to believe that even with Douglas out of the picture, Kara was exercising bad judgment in her

relationships. Also in January, Kara received a recommendation that she undergo inpatient substance-abuse treatment.

In early February 2017, the juvenile court terminated Kara's parental rights to her three older children. This development hit Kara hard. In late February, she tried to enroll in two different substance-abuse treatment centers but left both inpatient facilities the same day she arrived. Kara later blamed her lack of commitment on her teetering mental health:[3] "I felt completely hopeless. I had just went through a termination hearing on my children. Mentally, I just wasn't—I wasn't okay." She was in jail on a probation violation for most of March 2017 and did not have visitation with L.C. The court modified her bond so that she could attend treatment. From jail, she was transferred to a psychiatric unit at the local hospital and from there to an inpatient treatment program.

One day after her admission to treatment, on April 4, 2017, the State filed a petition to terminate her parental relationship with L.C. About three weeks later, her attorney filed a motion for continuance and extension of permanency, citing her compliance with substance-abuse treatment and her intent to discharge to Heart of Iowa, a facility where L.C. could be placed with her while she continued treatment. On May 5, her attorney filed a "motion for reasonable efforts," requesting L.C. be placed in Kara's care when she was admitted into the Heart of Iowa program on May 9. The juvenile court set that motion for consideration on the same day as the termination petition.

---

[3] As the juvenile court noted, in her psychological evaluation completed in October 2016, Kara "was diagnosed with bipolar disorder, post-traumatic stress disorder, generalized anxiety disorder, ADHD, stimulant related disorder, as well as borderline personality disorder." The court found Kara had not addressed these mental health issues "in any meaningful way since the onset of the case."

In mid-May 2017, the juvenile court held a hearing concerning the State's petition to terminate the parental relationship between L.C. and his parents. The court heard testimony from the DHS case worker, both parents, a nurse care manager who worked with Kara, and a family care coordinator. In June, the juvenile court granted the petition on the following grounds: Iowa Code section 232.116(1)(g), (h), and (*l*).

Kara now appeals. We address her four claims in turn.

## I. Did the State prove a statutory ground for termination under Iowa Code section 232.116(1) by clear and convincing evidence?

Kara claims insufficient evidence supports the termination of her relationship with L.C. Where the juvenile court has terminated a parent's rights on multiple grounds, "we need only find termination appropriate under one of these sections to affirm." *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). In this case, we find the juvenile court properly terminated the mother's parental rights under section 232.116(1)(g). This section provides for termination of parental rights where:

> The court finds that all of the following have occurred:
> (1) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family . . . .
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Iowa Code § 232.116(1)(g).

Kara does not dispute the proof of elements (1) and (2). She focuses on elements (3) and (4). She contends she is willing and able to respond to services that would correct her history of drug abuse and exposure of the children to domestic violence, and she predicts that an additional period of rehabilitation would be able to correction the situation.

On appeal, the State points to Kara's past performance to cast doubt on her commitment to stability and her prediction of success:

> [T]he mother did not seek treatment in a consistent manner until April of 2017. Despite the mother having her rights to L.C.'s siblings terminated, the mother did not engage in visits with L.C. for over three months. Within a 48 hour period, the mother left two substance abuse programs because she did not want to follow their rules.
> While the mother successfully completed 30 days of substance abuse treatment by the termination hearing, the mother had not demonstrated an ability to maintain her sobriety outside of a custodial setting. The mother has a history of achieving sobriety and later relapsing outside of a custodial setting.

The guardian ad litem was equally skeptical in her response to the petition on appeal: "Kara's actions were eleventh hour, especially given the fact that she has had two years of continuous services due to her older children and only attended inpatient treatment after the district court required that or incarceration."

Kara testified her motivation to seek treatment was not tied solely to avoiding jail but, rather, she now believes she deserves to live in "sobriety and recovery." The juvenile court found her testimony "unconvincing." We defer to the juvenile court's specific credibility determination. *See In re A.S.*, 743 N.W.2d 865, 868 (Iowa Ct. App. 2007). The record contains clear and convincing evidence that Kara lacks the ability to respond to services that would correct her longstanding battles with substance-abuse and mental-health issues, and more

time for rehabilitation does not promise to resolve her instability. According, we find termination proper under section 232.116(1)(g).

## II. Did the juvenile court err in denying her request for a six-month extension?

Kara next contends the juvenile court should have deferred permanency for six months to afford her more time to reunify with L.C. To defer permanency, a court is required to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Here, the juvenile court did not believe the need for L.C.'s removal would disappear after six months. The court reasoned: "Given mother's substance abuse issues and lack of attending to her mental health issues, the [c]ourt is unable to determine that an extension of time would sufficiently address these concerns to the extent the child could be returned to mother's care." From our review of the record, we reach the same conclusion.

## III. Was termination in L.C.'s best interests?

Kara insists, even if the State proved the grounds for termination, severing the parent-child relationship would be more detrimental to L.C. than deferring permanency. She highlights her strong bond with L.C. based on her role as his primary caregiver during the first six months of his life.

Our determination of a child's best interests must track Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting judicial use of an unstructured best-interests test). That provision focuses on the

child's safety; the best placement for furthering his long-term nurturing and growth; and his physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2). "For a child who has been placed in foster family care by a court," we also consider "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family." *See id.* § 232.116(2)(b).

The record shows L.C. has a bond with his mother and she has positive interactions with him during visits. But in assessing L.C.'s long-term best interests, the juvenile court wrote:

> The child is currently placed in a foster adopt home with his three half-siblings. The foster parents have indicated a willingness to adopt all four children and keep them together as a sibling unit. The guardian ad litem reported that the child has a significant bond with his siblings and the foster-adopt parents and that the child would suffer more harm if these bonds are separated as opposed to separating the bond with either parent.

The juvenile court decided termination of parental rights, followed by adoption along with his half-siblings, would "best meet the child's long-term physical and emotional needs." We agree. L.C. should not be deprived of timely permanency "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *See P.L.*, 778 N.W.2d at 41.

**IV.    Did the juvenile court err in denying her reasonable-efforts motion?**

In her final issue, Kara asserts reasonable efforts were not made toward reunification because the juvenile court declined to place L.C. with her at the Heart of Iowa residential treatment facility. *See* Iowa Code § 232.102(7) (requiring the DHS to "make every reasonable effort to return the child to the

child's home as quickly as possible consistent with the best interests of the child"); *see also In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

The juvenile court offered a blunt assessment of Kara's proposal that reasonable efforts required a trial placement of L.C. with her while she was at the residential treatment facility: "Although the child could be safely placed with Kara while at the Heart of Iowa program, the [c]ourt finds this to be a false reality." The court continued: "If not for the Heart of Iowa program, the child could certainly not be placed in her care given her extensive history of substance abuse; untreated mental health issues; and repeated exposure to volatile relationships and domestic violence." The court also expressed its concern about the sincerity of Kara's dedication to the program, given her previous fits and starts in seeking treatment.

We find no failure to provide reasonable efforts. The DHS case worker testified Kara's "five weeks of treatment" at the Heart of Iowa was not "a significant amount of time to place this child in her care." The worker was concerned Kara would not follow through with treatment, further disrupting L.C.'s routine and risking his safety. The record supports the juvenile court's denial of the reasonable-efforts motion.

We affirm the order terminating Kara's parental relationship with L.C.

**AFFIRMED.**